IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

SHELONDA F. ROBINSON                                                    PLAINTIFF

V.                                        NO.  4:08cv00088 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                 DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Shelonda F. Robinson, seeks judicial review of the denial of her claim for

a period of disability and disability insurance benefits and supplemental security income

(SSI) benefits.  Both parties have submitted briefs (doc. 13, 15).

For the reasons that follow, the Court[1] **affirms** the Commissioner's decision that

Plaintiff is not disabled within the meaning of the Social Security Act and regulations and,

therefore, is not entitled to disability insurance benefits or SSI benefits.

I.

The Commissioner's denial of benefits must be upheld upon judicial review if the

decision is supported by substantial evidence in the record as a whole.  *Wiese v. Astrue*,

552 F.3d 728, 730 (8th Cir. 2009); *see* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial

evidence is "less than a preponderance but is enough that a reasonable mind would find

it adequate to support the conclusion."  *Wiese*, 552 F.3d at 730.  In its review, the Court

should consider evidence supporting the Commissioner's decision as well as evidence

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge (doc. 14).

detracting from it. *Id.* That the Court would have reached a different conclusion is not a sufficient basis for reversal; rather, if it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed. *Id.*

## II.

In her application documents and at the hearing before the ALJ, Plaintiff alleged inability to work since March 13, 2005, due to ulcers, kidney stones, pancreatitis, acid reflux, "severe kidney failure," stomach pain, nausea, dizziness and sleepiness from her medications, back pain, headaches, and bladder problems. (Tr. 35, 55, 65, 74-75, 231, 253, 257-58, 262-63.) Plaintiff was twenty-six years old at the time of the hearing and was a freshman in college, testifying that she attended Pulaski Tech community college in 2004 and 2005 and had just started taking online classes instead due to her health. (Tr. 247.) She has her certified nursing assistant (CNA) certificate, and she has completed "income tax school." (Tr. 79, 248.) She has past work as a CNA in a nursing home, a hotel housekeeper, a cashier, and an income tax preparer. (Tr. 66, 75, 248-49.) Plaintiff testified that she lives with her two children, an eight-year-old son and an infant daughter. (Tr. 249-50.) She said her mother pays her rent and comes and helps with the children. (Tr. 250-51.) She said she has no income or child support, receives food stamps, and has recently reapplied for Medicaid, which she used to receive. (Tr. 250-51.)

Under the applicable law, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The regulations provide a five-step sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.*

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ next determined, at step two, that Plaintiff suffered from severe impairments associated with pancreatitis, gastritis and kidney stones, but that none of her impairments, individually or in combination, equaled a step-three listed impairment as contained in the regulations. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work, but retained the residual functional capacity (RFC) to perform sedentary work. At step five, after consulting the Medical-Vocational Guidelines, taking testimony from a vocational expert, and considering Plaintiff's age, education, work experience and RFC, the ALJ found that there were a significant number of jobs in the national economy which Plaintiff could perform. *See* 20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.24. The ALJ thus concluded that Plaintiff was not disabled. (Tr. 11-16.) Plaintiff pursued administrative review with no success, making the ALJ's decision the final decision of the Commissioner. (Tr. 4-6.)

Plaintiff argues (doc. 13) that the Commissioner's decision is not supported by substantial evidence in the record as a whole because the ALJ: (1) in assessing her RFC,

failed to consider the effects of her fatigue, pain, periodic chronic illness, and substantial limitations imposed by her pancreatitis, on her ability to reliably attend any job; (2) ascribed no additional limitations due to her daily complaints of nausea and abdominal pain; (3) erred in relying on the Medical-Vocational Guidelines and should have explicitly presented the issue of pain to the vocational expert for consideration of its effects on her ability to perform work; and (4) gave "wholly inadequate" reasons for discounting her pain.

III.

RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), (b) & (c), 416.945(a)(1), (b) & (c).  The ALJ bears the final responsibility for assessing a claimant's RFC at step four of the sequential evaluation, based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 416.927(e)(2), 416.945(a)(3).

Here, the ALJ found that Plaintiff had the RFC to perform sedentary work activity, *i.e.*, lifting ten pounds occasionally and five pounds frequently, standing and walking two hours in an eight-hour workday, and sitting about six hours in an eight-hour workday with normal breaks.  (Tr. 14, 16.)

In assessing Plaintiff's RFC, the ALJ first discussed Plaintiff's medical history (Tr. 12-13), including: (1) her hospitalization and clinical work-ups in December 2004 with discharge diagnoses of pancreatitis, nausea, vomiting, abdominal pain, urinary tract

4

infection, and tobacco abuse, for which she was treated and released (Tr. 116-36, 158-63, 202);[2] (2) her emergency room treatment in March 2005 for abdominal pain and nausea, for which she was treated and released, with a CT scan showing no clinical evidence of acute abdominal or pelvic pathology (Tr. 99-115, 151-57, 182-86); (3) a May 2005 esophagogastroduodenoscopy indicating mild gastritis (Tr. 180-81); (4) emergency room treatment in August 2005, with normal ultrasounds of the gall bladder and bile duct, and diagnoses of pregnancy and a urinary tract infection (Tr. 169-77); (5) hospitalization January 19-22, 2006, with impressions of hydronephrosis (swelling of kidneys due to backup of urine), pyelonephritis (urinary tract infection), history of kidney stones, back pain with history of pancreatitis, intrauterine pregnancy, and pleural effusion (fluid in the chest), conditions which were generally resolved during her stay (Tr. 203-22);[3] and (6) evaluation and treatment of nausea, vomiting and abdominal pain on March 9, 2006, with inpatient admission denied because Plaintiff did not exhibit any evidence of an acute abdominal process (Tr. 197).  The ALJ's summary of the medical evidence is supported by the record as referenced above.

The ALJ next discussed the consultative internal medicine examination performed on December 19, 2006, by Gary P. Nunn, M.D. (Tr. 13, 223-28), which the ALJ had

---

[2]A CT scan performed on December 28, 2004, showed "clinical suspicion of pancreatitis." (Tr. 121-22.)  Additionally an esophagogastroduodenoscopy the next day showed diffuse gastritis, esophagitis, and a small hiatal hernia.  (Tr. 123-24, 158-59.)

[3]Although there was some discussion upon admission of a placement of a stent due to obstruction from a possible calculus (Tr. 210), no calculus was found on an ultrasound and the urologist ultimately determined that conservative treatment with antibiotics was the best course of action (Tr. 203).

ordered after the hearing to explore Plaintiff's kidney problems (Tr. 269).[4]   Although Dr. Nunn noted Plaintiff's complaints of daily nausea and abdominal pain, his physical examination of her was normal.  He observed that her abdomen was tender diffusely but had no palpable masses, and his impression was pancreatitis.  He completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), finding that she could lift/carry ten pounds occasionally and less than ten pounds frequently; had no limitations in sitting, standing, walking, pushing/pulling; could frequently climb, balance, kneel, crouch, crawl or stoop; and had no limitations in reaching, handling, fingering, feeling, seeing, hearing and speaking.  (Tr. 225-28.)

The ALJ also stated that he had considered and given some weight to the opinions of the non-examining state agency medical consultants who reviewed Plaintiff's medical records and prepared a physical RFC assessment, finding that she could occasionally lift/carry up to fifty pounds, could frequently lift/carry up to twenty-five pounds, could stand/walk/sit about six hours a day, and had no postural, manipulative, visual, communicative or environmental limitations.   (Tr. 15, 187-96.)   *See* 20 C.F.R. § 404.1527(f)(2)(i)-(ii), § 416.927(f)(2)(i)-(ii) ((ALJ must consider findings of "highly qualified [state agency] physicians and psychologists who are also experts in Social Security disability evaluation").

---

[4]Plaintiff referred to her problems as "severe kidney failure" (Tr. 253, 260); however, this is not supported by the medical evidence.  At the hearing, the ALJ questioned her about it, and her attorney explained that she was probably referring to her kidney problems as documented in the medical records, which was not "technically or clinically what we would call kidney failure."  (Tr. 261.)

The ALJ also evaluated Plaintiff's subjective allegations of pain, nausea and other symptoms.  (Tr. 13-14.)  A claimant's subjective complaints may be discounted if they are inconsistent with the evidence as a whole.  *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007).  The ALJ is in the best position to gauge credibility and is granted deference in that regard as long as he explicitly discredits a claimant's subjective testimony and gives good reasons for doing so.  *Id.* at 695-96.  The Social Security regulations and rulings identify a number of factors for the ALJ to consider in assessing credibility, most of which were set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c);[5] Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3, *5 (S.S.A. 1996).  However, an ALJ need only acknowledge and consider these factors, and need not explicitly discuss each one.  *Casey*, 503 F.3d at 695.  Nor is an ALJ required to discuss all of the evidence submitted, and his failure to cite specific evidence does not mean that it was not considered.  *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Here, the record shows that the ALJ expressly and properly discounted Plaintiff's allegations of disabling pain and limitations and gave valid reasons for his credibility determination.   He stated that he had evaluated Plaintiff's subjective allegations in accordance with *Polaski* and other relevant authority, finding that her complaints were not "fully credible" and that her testimony and allegations as to the extent of her symptoms,

---

[5]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

limitations and restrictions were credible "only insofar as they are supported by the medical evidence." (Tr. 13-14, 15.)  In doing so, the ALJ discussed several factors undermining Plaintiff's credibility.

He first found that the medical findings were not consistent with the disabling level of pain alleged by claimant. (Tr. 13.)  This is supported by the medical evidence cited above and is an appropriate factor to consider.  *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (relevant factor in credibility determination is lack of objective medical evidence for back and abdominal pain); *Juszczyk v. Astrue*, 542 F.3d 626, 631-32 (8th Cir. 2008) (adverse credibility determination supported by lack of objective medical and clinical evidence to support alleged depth and severity of physical impairments); *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (adverse credibility finding supported by lack of supporting medical findings and treatment); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (record did not support allegations of constant, unremitting pain where little medical evidence supported allegations).

Next, he found that her daily activities were inconsistent with claims of a disabling impairment. (Tr. 13-14.)  In her application documents and at the hearing, Plaintiff reported that she prepares meals, cleans, does cleaning and laundry, drives, shops once a week for three hours, pays bills and uses a checkbook or money orders, reads, watches television, goes out to eat, attends church and school regularly, takes online classes, gets her son and herself dressed each morning, takes her son back and forth to school, and takes care of her infant daughter during the day. (Tr. 58-61, 265.)  The extent of these daily activities are not consistent with an individual disabled by pain and nausea, and were relevant to the ALJ's credibility determination.  *See Steed v. Astrue*, 524 F.3d 872, 876 (8th

Cir. 2008) (no error in discounting credibility where self-reported limitations were inconsistent with medical evidence and daily activities, including housework, caring for child, cooking and driving); *Wagner v. Astrue*, 499 F.3d 842, 851-52 (8th Cir. 2007) (proper to discredit subjective complaints due to claimant's extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (caring for eleven-year-old child, driving, fixing simple meals, doing housework, and shopping for groceries); *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (claimant regularly drove; shopped; performed housework, such as cooking, cleaning, and washing dishes; fished; attended church two to three times per week; cared for her personal needs; and home-schooled her two children); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) (claimant cared for her special needs children, paid bills, did laundry and cooking); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (claimant cooked, cleaned, did laundry, shopped, studied Russian, exercised, and functioned as the primary caretaker for her home and two small children).

The ALJ also stated that he had considered precipitating and aggravating factors for Plaintiff's pain, as well as the dosage, effectiveness and side effects of her medication. (Tr. 14.) Plaintiff reported that drinking sodas and not enough water aggravated her symptoms (Tr. 55); she testified that she had to "watch certain foods" to avoid a flare-up (Tr. 258); and she went to the ER with problems after eating spicy food or fast food on two occasions (Tr. 109, 131), and, another time, after taking "Bactin" on an empty stomach (Tr. 99). Plaintiff testified at the hearing that her medications made her pain level "mild," but that the one she took for stomach pain (Protonix) made her dizzy and sleepy. (Tr. 253-55, 266.) She said that was the only medication she was taking at the time of the hearing. (Tr.

9

254, 266.)  She reported that, besides medication, her pain was alleviated by sleep and that she took a nap once a day.  (Tr. 55-56.)  The ALJ properly observed that her use of medications did not suggest the presence of a more limiting impairment than assessed by his RFC.  (Tr. 14.)

The ALJ looked at the duration, frequency and intensity of Plaintiff's alleged pain (Tr. 14), referring to her responses to the pain questionnaire, where she reported that she only experienced pain every three to six months and then it only lasted two or three days. (Tr. 55.) This is inconsistent with her hearing testimony that she experienced stomach pain and nausea "every day" and "all the time," which kept her from being able to work.  (Tr. 253, 257-58.)

The ALJ also discussed Plaintiff's alleged functional restrictions, noting her reports that her ability to sit, stand, and walk was "normal," but that, when she was in pain, she could not eat or drink anything to the point that she could not keep her head up and had to lie in one spot for a long period of time.   (Tr. 14.)  Her application papers state that the lower part of her back and her stomach hurt when she lifts about forty pounds, or when she squats, reaches or bends.  She also said she gets "a quick pain" at times and, when she stands for about four hours, she gets a headache.  She said that sitting for a long period of time hurts, as well as kneeling.  She said she climbs "a lot of stairs" going to school, and she can walk "for quite some time" before needing to stop and rest.  (Tr. 62.)

The ALJ acknowledged that Plaintiff had some degree of pain, but noted that the real issue is whether the pain is so severe as to result in total disability.  He also properly focused on Plaintiff's ability to function despite her pain and other symptoms, rather than the existence of a diagnosed medical condition. (Tr. 14.)  There is no dispute that Plaintiff

suffers from periodic bouts of pancreatitis and urinary tract and kidney problems, or that she experiences pain, fatigue and nausea due to her conditions.  The real issue is whether those conditions produce sufficient pain and functional restrictions to prevent her from performing any kind of work.  *See Blakeman v. Astrue*, 509 F.3d 878, 882 (8th Cir. 2007) ("The issue is not whether [claimant's] heart condition is fatiguing, it is whether his fatigue is disabling."); *Gregg v. Barnhart*, 354 F.3d 710, 713-14 (8th Cir. 2003) (crucial question is not whether claimant experiences pain, but whether claimant's credible, subjective complaints prevent him from performing any type of work).

The ALJ did not totally disregard Plaintiff's subjective allegations, and he expressly stated that he was limiting her to sedentary work after taking into account the fact that she experiences some degree of pain or discomfort. (Tr. 14.)  Furthermore, his RFC findings were more limited than those assessed by Dr. Nunn or by the state agency medical consultants, again demonstrating that he made some allowance for Plaintiff's subjective complaints.

Under these circumstances, the ALJ's credibility determination is entitled to deference, and substantial evidence in the record as a whole supports his RFC assessment limiting her to work at the sedentary level.  *See Duncan v. Barnhart*, 368 F.3d 820, 822, 824 (8th Cir. 2004) (claimant with chronic and acute pancreatitis and other conditions retained ability to perform light work); *Dolph v. Barnhart*, 308 F.3d 876, 880 (8th Cir. 2002) ("While there is little doubt that [the claimant] experiences [abdominal pain due to kidney disease], the issue in this case is whether the pain is so severe as to be disabling.").

IV.

Plaintiff also contends that the ALJ erred in relying on the Medical Vocational Guidelines to find her not disabled and instead should have explicitly presented the issue of her pain to the vocational expert for consideration of its impact on her RFC.  At the hearing, the vocational expert was questioned only about the exertional requirements of Plaintiff's past work.  (Tr. 267-68.)

At step five of the sequential analysis, the Commissioner bears the burden of showing that jobs exist in significant numbers which a person with the claimant's RFC can perform.  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  This burden can be satisfied by reference to the Guidelines, which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experiences with differing degrees of exertional impairments.  *Fenton v. Apfel*, 149 F.3d 907, 910 (8th Cir. 1998).  Generally, where the claimant suffers from a nonexertional impairment such as pain, the ALJ must obtain the opinion of a vocational expert instead of relying on the Guidelines.  *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).  However, the Guidelines still may be used where the nonexertional impairment "does not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities."  *Id.*  In particular, when a claimant's subjective complaints of pain are "explicitly discredited for legally sufficient reasons articulated by the ALJ," the Commissioner's burden at the fifth step may be met by use of the Guidelines.  *Id.* at 894-95.

Here, as discussed above, the ALJ expressly discredited Plaintiff's subjective complaints of pain to the extent alleged for legally sufficient reasons; therefore, use of the

12

Guidelines was proper.  Moreover, as stated, he adequately accounted for some pain and other restrictive symptoms by limiting her to sedentary work.

V.

After a careful review of the evidence and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 24th day of March, 2009.


_____
UNITED STATES MAGISTRATE JUDGE

13